## PATRICK *v.* MESERVE & a.

If a mortgagor and mortgagee of chattels agree that the latter shall receive them in payment of the debt, and that he may immediately take possession, that is equivalent to actual delivery, if the chattels are at a great distance, and the purchaser use no laches in obtaining possession.

If a purchaser deliver property to the vendor, who simultaneously declares, concerning the chattels in controversy, "they are now yours," these chattels, being at the time at a great distance, that is evidence of a sale of them.

A sale of a chattel by a mortgagee, with the assent of the mortgagor, vests a title in the purchaser.

TRESPASS, for taking a pair of oxen. The defendants justified the taking by virtue of an execution in their favor against Charles Patrick, whose property they alleged the oxen were.

The evidence showed the oxen to have been originally the property of one Ozem Davis, who sold them to said Charles Patrick, and took his note and a mortgage upon the same cattle to secure the note : That the plaintiff was the son of Charles Patrick, and they lived together upon a farm, belonging to Olive Grant, the mother of Mrs. Charles Patrick, who also was a member of the family, and the farm, for many years, had been carried on and managed by said Charles, until the plaintiff became twenty-one years of age.

Charles failed to pay the note to Davis, when it became due in the fall of 1843, and sent the oxen to the State of Maine to be wintered. In March, 1844, Davis came to Charles and demanded payment of the note, or a re-delivery of the oxen, which he offered to take and give up the note; but, the oxen being in Maine, the evidence tended to show that Charles was to let the plaintiff go and get them, and deliver them to Davis, he paying the expense; that the plaintiff set out for that purpose, and

went as far as Davis' house, and they both returned, and the plaintiff went into the house, and Charles went out to the barn; that the plaintiff returned, and they yoked up two pairs of steers, three of which belonged to said Olive, and the other to Mr. Wentworth, but which the plaintiff afterwards bought of Wentworth, and when Davis got them into the road, he said to the plaintiff, "I sold the oxen to your father once, and he did not pay me for them, and now they are yours." Charles knew nothing of any sale to the plaintiff, except what occurred at the barn, and never sold them himself, nor had any thing to do with it.

Upon this evidence the defendants contended that it was not competent for the jury to find a sale of the oxen from Davis to the plaintiff, Charles, having testified that he (Charles) had never so sold them, and requested the court to instruct the jury "that the interest which Davis acquired by the mortgage was not such as enabled him to pass the title to the plaintiff in any other way than by a transfer of the debt and mortgage; and that an offer by Davis to take the oxen, if the mortgagor would deliver them, gave him no power to sell, until they were delivered and received by him, so as to transfer the property to the plaintiff. But the court instructed the jury that Davis might so sell them, and that the title would be good, if Charles assented to such sale. The jury returned a verdict for the plaintiff, and the defendants moved to set it aside, and for a new trial.

*Bellows,* for the defendants.

*Cooper,* for the plaintiff.

WOODS, J. The plaintiff derives title to the chattels, for the taking of which he has brought his action, from

Davis, who originally owned them. Davis, however, had sold them to Charles Patrick, under whom the defendant claims, by virtue of an attachment, to hold the possession.

Charles Patrick, to secure the price, mortgaged the oxen to Davis. The price not having been paid, Davis offered to take them back in payment, and Charles agreed to the offer; but the oxen were, at the time when this agreement was made, in the State of Maine, at a considerable distance from the parties, and therefore incapable of being delivered, in the ordinary sense and manner; and that circumstance has given rise to one of the questions which the case presents, whether or not there was a sufficient delivery of the chattels by Charles to Davis, or whether or not enough was done to dispense with such delivery, and to make the transmission of the property from the one to the other of those parties perfect, as against the attaching creditors of the vendor.

The doctrine of *Ricker* v. *Cross*, 5 N. H. Rep. 570, is, that although a sale of chattels is not in general perfect, except between the parties to it, without a manual tradition of them, yet that rule admits many exceptions, "and that all cases of sales of chattels which are so situated that there can be no delivery at the time of the sale, are within the exceptions of the general rule, whether the chattels are upon the land or upon the water. Negligence, on the part of the vendee, to take possession, may invalidate his claim, as against creditors or subsequent purchasers, without notice; but if there be no laches on the part of the vendee, if he take possession in reasonable time, his title can in no case be impeached for want of possession."

Now, laying out of sight the fact that Davis, as mortgagee of the chattels, had a constructive possession that would have enabled him to maintain trespass against a stranger, or any one claiming under Charles, enough ap-

pears to have been done in this case to make a perfect sale of them from Charles to the plaintiffs, in satisfaction of the debt. As between the parties to it, it was perfect, and the debt was canceled. The permission given to Davis to take possession, and his acceptance of the permission offered, and a prompt procedure, in the manner agreed on, to take the chattels into his custody, by dispatching the plaintiff for them and the actual setting forth of this agent for that purpose, are circumstances clearly sufficient to bring the case within the doctrine of the decision which has been cited. They go further. They go to the extent of disproving any laches on the part of the purchaser, which would have had the effect of postponing his title to that of a subsequent purchaser without notice, or of an attaching creditor, had such a title intervened. Independently of the mortgage, therefore, it might well be holden that a perfect sale of the chattels, or waiver of his right to redeem them, which was all he had, had been made by Charles Patrick to Davis, and that he could have sold them to the plaintiff.

But less than that would have sufficed to enable Davis to transfer to the plaintiff a possession of the oxen, that would have authorized him to bring and maintain this action.

The facts show that Davis, having at least a right to the immediate possession of the chattels under the mortgage, and the right, under the statute, to sell them to satisfy his debt, did sell them to the plaintiff with the assent of Charles Patrick. It needs no argument to prove that a sale of the chattel by the mortgagee, with the assent of the mortgagor, is just as effectual as a sale under the statute with the formalities prescribed by law; for these formalities, made for the benefit of the mortgagor, may be waived by him.

Was there, then, a sale from Davis to the plaintiff? for the assent may well be inferred from the previous trans-

actions that have been adverted to, as well as from the silence of Charles Patrick during the proceedings which we are now to consider.

There was, on the part of the plaintiff, the supposed purchaser, the delivery of four steers to Davis, who received and drove them away ; and, for any thing that is shown, still retains them without interruption, and without any adverse claim from any source. Simultaneously with that of delivery there was the declaration of Davis, that the oxen in question were then the plaintiff's. "I sold the oxen to your father once, and he did not pay for them, and now they are yours."

This, as in the former case, was all that the circumstances admitted. The oxen were at a distance, and there could be no manual delivery of them, had a delivery been necessary. What was done was equivalent to a delivery, and the evidence of a sale appears to be quite perfect.

No question is made as to the subsequent possession of the plaintiff, or whether or not he was guilty of any such tardiness in endeavoring to gain it as could, in any circumstances that may be imagined, compromise the position that he had acquired by the acts that had been performed at the time when the history of the title closes. No such laches can of course be presumed. The plaintiff stands well where the evidence leaves him, and he is entitled to

*Judgment on the verdict.*